UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY SCOTT STEVENS,

                Petitioner,         Case No. 2:17-cv-11993
                                               Hon. Paul D. Borman

v.

BONITA J. HOFFNER,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING RESPONDENT'S MOTION TO DISMISS [Dkt. 11], (2) DENYING PETITION FOR WRIT OF HABEAS CORPUS [Dkt. 1], (3) DENYING CERTIFICATE OF APPEALABILITY, AND (4) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Michigan prisoner Randy Scott Stevens ("Petitioner") filed this habeas case under 28 U.S.C. § 2254. Petitioner pled guilty in the Jackson Circuit Court to second-degree child abuse. MICH. COMP. LAWS § 750.136b. Petitioner was sentenced to 5-to-10 years' imprisonment.[1] The petition raises four claims: (1) Petitioner's act of allowing his child to go to the home of a known sex offender did not constitute second-degree child-abuse, (2) the police used fraudulent

---

[1] Petitioner is also serving a concurrent sentence of 39-to-60 years' imprisonment for his Jackson Circuit Court conviction of first-degree criminal sexual conduct. Petitioner has seven other Jackson Circuit Court convictions for criminal sexual conduct with terms of imprisonment longer than his child abuse sentence as well. Those convictions and sentences are not challenged by the current petition.

information to obtain a warrant for Petitioner's arrest, (3) Petitioner was deprived of the effective assistance of trial counsel, and (4) Petitioner was denied the effective assistance of appellate counsel. Respondent filed a motion to dismiss the petition on the grounds that some of Petitioner's claims are unexhausted. Despite Petitioner's failure to exhaust his state court remedies with respect to his second, third, and fourth claims, the petition will be denied because all of Petitioner's claims lack merit. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal in forma pauperis.

## I. Background

Petitioner originally faced a possible life sentence when he was charged with first-degree child abuse, arson of a dwelling house, and being a habitual felony offender. Dkt. 11-1, Pg. ID 484. The child-abuse charge related to allegations that Petitioner and his wife sent their minor children to the home of a known pedophile. Id., at 490-92. The arson charge related to an unrelated allegation that Petitioner set fire to a house. Id., at 491.

On November 18, 2013, Petitioner entered into a plea bargain whereby he agreed to plead guilty to the lesser offense of second-degree child abuse, and in return the prosecutor agreed to dismiss the original charges. Id., at 548. Petitioner was placed under oath at the plea hearing, and he testified that he understood the

2

terms of the agreement. Id., at 549. He denied that anyone threatened him or used any force to obtain his plea. Id. Petitioner agreed that he was pleading guilty freely, understandingly, and voluntarily. Id. Petitioner indicated his understanding that the maximum possible penalty for the offense was 10 years. Id. The trial court advised Petitioner of all the trial and appellate rights he would be waiving by entering a guilty plea, and Petitioner indicated his understanding. Id., at 550-51.

The trial court then had defense counsel elicit a factual basis for the plea. Petitioner agreed that between September of 2011 and January of 2013, he resided in Jackson County with a number his children, including Devon Holbrook. Id., at 551-52. Petitioner agreed that he knew Geoffrey Friant, a convicted sex offender. Id., at 552. Petitioner agreed that due to "bad choices" he allowed Devon to have contact with Fiant and go to his house, and that Devon was thereby exposed to serious physical or mental harm. Id., at 552.

The prosecutor noted that the amended charge of second-degree child abuse, unlike the original charge of first-degree child abuse, required that Petitioner "knowingly or intentionally" allowed his child to go to the house of the sex offender which was and act "likely to cause serious physical or mental harm," as opposed to the victim actually suffering from such harm. Id., at 552-53. The Court agreed that the description given at the plea hearing met the elements of the

3

reduced charge. Id., at 553. The court then accepted Petitioner's plea as understanding, voluntary, and accurate. Id.

On January 2, 2014, Petitioner was sentenced to 6-to-10 years' imprisonment, and he was ordered to pay $3,380 in restitution. Id., at 558-580.

Petitioner was appointed appellate counsel who filed an application for leave to appeal in the Michigan Court of Appeals. The application raised four claims: (1) the elements of second-degree child abuse were not established at the plea hearing, (2) the sentencing guidelines were scored incorrectly, (3) the trial court erred in ordering Petitioner to pay restitution, and (4) the trial court erred in failing to address Petitioner's challenges to the contents of the presentence investigation report. Dkt. 1-2, at Pg ID 150-54.

The application was denied by the Michigan Court of Appeals, but the Michigan Supreme Court remanded the case "for consideration as on leave granted." *People v. Stevens*, 497 Mich. 880 (2014) (table). On remand, the Michigan Court of Appeals agreed that the sentencing guidelines were scored incorrectly, and it remanded the case to the trial court for resentencing. *People v. Stevens*, 2015 WL 4988624 (Mich. Ct. App. Aug. 20, 2015); Dkt. 1-2, at Pg ID 153-54. Petitioner appealed to the Michigan Supreme Court, but his application for leave to appeal was denied by standard order. *People v. Stevens*, 499 Mich. 882

(2016) (table).

Petitioner was resentenced on August 11, 2016. Dkt. 11-2, at Pg ID 582. A new sentencing report was generated which incorporated the findings made by the Michigan Court of Appeals. Id., at 584. The new guideline range called for a minimum term between 43 and 86 months. Id., at 612. The court resentenced Petitioner to 5-to-10 years' imprisonment. Id., at 613.

Petitioner did not file a new appeal. Instead, he filed a motion for relief from judgment in the trial court, apparently raising what now form his second, third, and fourth habeas claims, as well as other claims not presented here. Dkt. 10, at 2. The trial court denied the motion on June 16, 2016. Id. Petitioner filed an application for leave to appeal this decision in the Michigan Court of Appeals, and that appeal remains pending. Id., at 3.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved

> an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

> Under the "unreasonable application" clause of § 2254(d)(1),
>
> even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (citations, quotation marks, and alterations omitted).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v.*

*Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013)(internal quotation marks omitted).

### III. Analysis

A. Exhaustion

Respondent asserts that the petition should be dismissed without prejudice because Petitioner has not exhausted his state court remedies with respect to several of his claims. It is true that Petitioner's second, third, and fourth claims have not been exhausted because his post-conviction review proceeding which raises these claims is still pending in the Michigan Court of Appeals. Nevertheless, lack of exhaustion is not a jurisdictional issue, and the Court may deny relief on the merits with respect to unexhausted issues. See 28 U.S.C. § 2254(b)(2). Here,

because it can be determined that Petitioner's unexhausted claims are without merit, the Court will deny Respondent's motion to dismiss and instead deny the petition on the merits.

B. Factual Basis for Plea

Petitioner's first claim asserts that his plea is invalid because during the plea colloquy the prosecutor was permitted to alter the factual basis by clarifying that Petitioner committed the acts "knowingly or intentionally," terms that were not used by defense counsel when he initially elicited the factual basis for the plea from Petitioner. Petitioner asserts that he never admitted to knowing or intentional conduct at the plea hearing. The claim is not cognizable on federal habeas review.

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. See *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267.

Petitioner's first claim does not challenge either the power of the state to

bring him into court or the voluntarily nature of his guilty plea. Rather, the requirement that the trial court establish a factual basis for a guilty plea is a creature of state law, not the federal Constitution. While states are free to adopt procedural rules requiring a factual basis as Michigan has done in Michigan Court Rule 6.610(E)(1)(a), the Federal Constitution does not mandate them to do so. See *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc). Accordingly, defense counsel's alleged failure to elicit testimony from Petitioner sufficient to establish the elements of second-degree child abuse does not present a cognizable claim in this action.

Nevertheless, the claim is without merit for reasons stated by Michigan Court of Appeals:

> Second-degree child abuse requires that the defendant "knowingly or intentionally commit[ ] an act likely to cause serious physical or mental harm to a child regardless of whether harm results." MICH. COMP. LAWS § 750.136b(3)(b). Defendant admitted at the hearing, and does not now contest, that on numerous occasions, he knowingly and intentionally sent his son to the home of someone he knew to be a sex offender while taking no protective actions. Defendant does argue on appeal that it was not likely for harm to result to the child based on his actions. However, defendant explicitly admitted at the plea hearing that "as a result [of his actions, his son] was exposed to serious physical or mental harm." Direct and unequivocal admission to each individual element of the crime satisfies the factual basis requirement.
>
> This is not to say that simply by allowing a child to go to the home

> of a known sex offender that a parent is guilty of second-degree child abuse. Where a defendant disputes the charges, the prosecution must prove beyond a reasonable doubt that in doing so, the parent intentionally exposed the child to likely physical or mental harm. § 750.136b(3)(b). Here, however, the defendant knowingly and voluntarily admitted under oath that he did exactly that. See *People v. Fonville*, 291 Mich. App. 363, 377 (2011) (citation omitted) ("A factual basis to support a plea exists if an inclupatory inference can be drawn from what defendant has admitted.").

*Stevens*, 2015 WL 4988624, at *1.

As noted by the Michigan Court of Appeals, Petitioner admitted that he knowingly allowed one of his children to stay with a convicted sex offender at his house. Dkt. 11-2, Pg ID 551-52. Petitioner agreed that by doing so he was exposing his child to serious physical or mental harm. Id., at 552. The prosecutor simply clarified that Petitioner's act of sending his child to the home must have been performed "knowingly or intentionally," and the trial court found that the description already given at the plea hearing "met the elements." Id., at 552-53. The Court agrees with the trial court and the state appellate court that a sufficient factual basis was made to support the guilty plea. The claim is not cognizable and without merit.

C. Arrest Warrant

Petitioner's second claim asserts that the police officers and prosecutor used fraudulent information to obtain the arrest warrant. Specifically, Petitioner claims

that after detectives interviewed him while he was in jail on an unrelated charge, they falsely claimed that Petitioner made inculpatory statements leading to the warrant for the child-abuse charge. Petitioner admitted to telling the police that he allowed his child to go over to a known sex offender's house, but contrary to the affidavit supporting the arrest warrant, he claims that the detectives falsely stated that he admitted that his child told him he had been molested. Dkt. 1, at Pg ID 63.

This claim does not state a basis for granting habeas relief. See *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (illegal arrest or detention does not void a subsequent conviction). Even if the arrest warrant was fraudulently obtained, the method by which Petitioner's presence was procured for proceedings in the trial court does not provide grounds for invalidating his criminal conviction. See *Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at * 1 (6th Cir. Feb. 1, 1990) ("petitioner's arguments that his arrest was absent probable cause ... [are] irrelevant, as an unlawful arrest is not a defense to a valid conviction.") (citing *United States v. Crews*, 445 U.S. 463, 474 (1980)). Accordingly, Petitioner's claim that his arrest

was the product of fraudulent statements made in the affidavit supporting the arrest warrant simply does not state a ground upon which habeas relief may be granted.

D. Ineffective Assistance of Trial Counsel

Petitioner's third claims asserts that he was denied the effective assistance of counsel prior to the entry of his guilty plea. He argues that his trial counsel: (1) failed to interview the victim, (2) failed to view the videotaped interview of Petitioner, (3) failed to become familiar with the case, (4) failed to seek recusal of the trial judge on the grounds that he was the presiding judge in the case against Geoffrey Friant, (5) waived Petitioner's preliminary examination without his consent, (6) failed to prepare an order for a forensic examination of Petitioner, and (7) failed to ascertain that the victim testified at the preliminary examination that he was not actually molested by Friant. These claims are waived by Petitioner's guilty plea.

Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by a valid guilty plea. See *United States v. Broce*, 488 U.S. 563, 569 (1989). The United States Supreme Court explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and

> intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. A defendant who pleads guilty waives claims that arose before his plea, and a reviewing court's inquiry is limited to whether the plea was knowing, intelligent, and voluntary. See *Broce*, 488 U.S. at 569. "Claims of pre-plea ineffective assistance not relating to the acceptance of the plea are waived under the same *Tollett* rule." *Rice v. Olson*, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) (quoting *United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001)). Petitioner's claims of ineffective assistance of counsel do not relate to the validity of his plea but to potential avenues of defense or investigation that were abandoned when he instead voluntarily chose to accept the plea bargain. Indeed, nowhere in the petition does Petitioner assert that he would have chosen to contest the charges at trial rather than accept the plea bargain but for his counsel's alleged ineffectiveness. See Dkt. 1, Pg ID 74-88. This claim is without merit.

E. Ineffective Assistance of Appellate Counsel

Finally, Petitioner's fourth claim asserts that he can establish cause and prejudice to excuse any procedural default of his second and third claims because his appellate counsel was ineffective for failing to raise them during Petitioner's direct appeal. It is not ineffective assistance for appellate counsel to decide not to raise meritless claims. See *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Moore v.*

13

*Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."). Petitioner was not denied the effective assistance of appellate counsel because the claims he alleges counsel should have raised are without merit.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims are completely devoid of merit. Therefore, the Court denies a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES** Respondent's motion to dismiss, 2) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 3) **DENIES** a certificate of appealability, and 4) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: March 12, 2018

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 12, 2018.

                                              s/Deborah Tofil
                                              Case Manager